**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENATA PLACEK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-02415 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| U.S. BANK, NATIONAL | ) | |
| ASSOCIATION, FIDELITY | ) | Magistrate Judge Jeffrey Cole |
| NATIONAL LAW GROUP, and | ) | |
| SELECT PORTFOLIO SERVICING, | ) | JURY TRIAL DEMANDED |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff RENATA PLACEK, through undersigned counsel, brings this amended complaint against Defendants U.S. BANK, NATIONAL ASSOCIATION, FIDELITY NATIONAL LAW GROUP, and SELECT PORTFOLIO SERVICING, INC., and alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action for damages for violations of the Fair Debt Collection Practices Act (the "FDCPA").

2.      The claims stated herein stem from Defendants' wrongful debt collection activities on a fraudulent refinancing of Plaintiff's home mortgage.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 1692k (FDCPA).

4.      Venue is proper in this District under 28 U.S.C. § 1391, as the events complained of occurred in this District.

1

**PARTIES**

5.      Plaintiff Renata Placek is a natural person who resides at 7910 Davis Street, Morton Grove, Illinois 60053 (the "subject property"), and from whom Defendants attempted to collect an allegedly defaulted debt, specifically, a mortgage allegedly secured by Plaintiff's home.

6.      Plaintiff and her husband, Krzysztof Placek, purchased the subject property on or about October 25, 1989 as their primary family residence.

7.      On February 8, 2005, Plaintiff's husband conveyed his interest in the subject property to Plaintiff.

8.      Plaintiff's husband ceased to have any individual interest in the subject property after February 8, 2005, and does not have an interest as of today.

9.      Plaintiff is a "consumer" as defined by Section 1692a(3) of the FDCPA.

10.      Defendant U.S. Bank, National Association ("US Bank") is a bank with corporate offices located at 190 S. LaSalle St., Chicago, Illinois 60603.

11.      US Bank is a debt collector (as that term is defined in Section 1692a(6) of the FDCPA) in this action because US Bank acquired servicing and/or enforcement rights to the alleged debt that is the subject of this action after such alleged debt was in default. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (the FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.").

12.      Defendant Fidelity National Law Group ("Fidelity") is a law firm with offices located at 10 South LaSalle Street, Suite 2750, Chicago, Illinois 60603. Fidelity is a debt collector (as that term is defined in Section 1692a(6) of the FDCPA) because it regularly uses the

mail or telephone to collect or attempt to collect debts owed or due or asserted to be owed or due to another.

13.     Defendant Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation with its principal place of business in Salt Lake City, Utah.

14.     SPS does business in the State of Illinois, including in this District.

15.     SPS is a debt collector (as that term is defined in Section 1692a(6) of the FDCPA) in this action because SPS acquired servicing rights to the alleged debt that is the subject of this action after such alleged debt was in default. *See Schlosser*, 323 F.3d at 536.

FACTS SUPPORTING CAUSES OF ACTION

16.     In April 2007, Plaintiff had two outstanding mortgages on the subject property.

17.     She was current on both of the outstanding mortgages on the subject property as of April 2007.

18.     At the end of April 2007 Plaintiff traveled to Poland to visit family, where she stayed from April 24, 2007, to May 8, 2007.

19.     On or about May 1, 2007, while Plaintiff was in Poland, an acquaintance of Plaintiff fraudulently and without Plaintiff's knowledge, authorization, or consent, entered into a $720,000 refinancing mortgage on the subject property by assuming Plaintiff's identity (the "Fraudulent Mortgage").

20.     The Fraudulent Mortgage and the mortgages that were refinanced thereby are alleged obligations of a consumer to pay money arising out of alleged transactions in which the money that is the subject of the transactions is primarily for personal, family, or household purposes.

21.     The Fraudulent Mortgage and the mortgages refinanced thereby are not business debts.

22.     Plaintiff's signature was forged on the related documents for the Fraudulent Mortgage.

23.     The lender for the Fraudulent Mortgage, Washington Mutual Bank, FA ("Washington Mutual"), accepted the forged documents as valid, advanced the $720,000 in connection with the Fraudulent Mortgage, and proceeded to service the Fraudulent Mortgage as if it was a valid, enforceable obligation of Plaintiff.

24.     Until October 2008, Plaintiff was unaware that the Fraudulent Mortgage existed or that she had been the victim of fraud.

25.     In October 2008, Plaintiff received a notice from Washington Mutual regarding a $90 underpayment of her monthly mortgage. In the notice, she saw that the monthly payment was approximately twice the amount of her ordinary monthly mortgage payment.

26.     The following day, also in October 2008, she drove to a local Washington Mutual branch in Morton Grove, Illinois, where she spoke to a branch manager and informed him that her mortgage payment and outstanding principal amount were incorrect.

27.     The branch manager told her that she was mistaken, and that if she had further issues to take them up with Washington Mutual corporate.

28.     In November 2008, Plaintiff contacted Washington Mutual's main corporate office by phone to inquire about the Fraudulent Mortgage.

29.     On this call, Washington Mutual informed Plaintiff that her mortgage had been refinanced in May 2007, and provided her with a phone number that Washington Mutual had used for communications about the Fraudulent Mortgage.

30.     Plaintiff recognized that the phone number provided by Washington Mutual was not hers or her husband's.

31.     Plaintiff told the Washington Mutual representative that she did not refinance her mortgage in May 2007, and that any such refinancing was not done by her and was done wrongfully.

32.     At this time, Washington Mutual knew or should have known that the Fraudulent Mortgage was entered into fraudulently and Washington Mutual should have agreed to unwind it and not seek payment from Plaintiff for it.

33.     Plaintiff requested at this time that Washington Mutual unwind the Fraudulent Mortgage transaction.

34.     Washington Mutual refused to unwind the Fraudulent Mortgage transaction despite the fact that Plaintiff informed the Washington Mutual representative that the Fraudulent Mortgage was entered into fraudulently and without her consent.

35.     In November 2008, after learning of the fraud and trying in vain to get Washington Mutual to unwind the Fraudulent Mortgage, Plaintiff stopped making payments on the Fraudulent Mortgage, causing an alleged default under the Fraudulent Mortgage documents.

36.     Plaintiff made no payments on the Fraudulent Mortgage at any time after November 2008.

37.     Plaintiff did not in fact legally owe any payments on the Fraudulent Mortgage since it resulted from a contract that she did not sign, did not authorize, and did not know about until over a year after it had been fraudulently created.

38.     After November 2008, in or around March 2009, and while the alleged default on the Fraudulent Mortgage that commenced in November 2008 was ongoing and uncured, JPMorgan Chase Bank, National Association, as successor in interest to Washington Mutual and holder of the Fraudulent Mortgage, assigned and transferred servicing and/or enforcement rights

on the Fraudulent Mortgage to Bank of America, National Association, as successor by merger to LaSalle Bank NA as Trustee for WAMU Mortgage Pass-Through Certificates Series 2007-HY07 Trust ("BofA").

39.     On March 5, 2009, BofA commenced a lawsuit against Plaintiff to foreclose on the Fraudulent Mortgage in the Circuit Court of Cook County, Illinois, case number 09 CH 10076 (the "Foreclosure Action").

40.     The Foreclosure Action complaint contained a single count against Plaintiff, for foreclosure of the Fraudulent Mortgage and collection of any deficiency thereon.

41.     In the Foreclosure Action, Plaintiff initially proceeded *pro se*.

42.     At all times in the Foreclosure Action, Plaintiff disputed the validity of the Fraudulent Mortgage and vigorously defended herself against the efforts of BofA (and its successors and assigns) to foreclose on her home.

43.     On or about August 18, 2011, BofA amended its complaint in the Foreclosure Action. In addition to the foreclosure count, the amended complaint included a count for an equitable lien against the subject property.

44.     Some time at the end of 2012 or beginning of 2013, US Bank acquired servicing and/or enforcement rights to the Fraudulent Mortgage from BofA and became the plaintiff in the Foreclosure Action, as assignee and successor in interest to BofA.

45.     At the time US Bank acquired servicing and/or enforcement rights to the Fraudulent Mortgage from BofA, BofA alleged and maintained that the Fraudulent Mortgage was a in default, and BofA and US Bank treated the Fraudulent Mortgage as if it was a debt in default.

46.     On February 13, 2013, Plaintiff, still representing herself *pro se*, filed a motion to dismiss both counts of the amended Foreclosure Action complaint, arguing that the foreclosure action was based upon fraudulent documentation and that she had never signed, authorized, or agreed to the Fraudulent Mortgage.

47.     On July 22, 2013, the court in the Foreclosure Action entered an order granting Plaintiff's motion and dismissing both counts of the amended Foreclosure Action complaint, with prejudice (the "Dismissal Order"). A true and correct copy of the Dismissal Order entered by the state court on July 22, 2013 is attached hereto as Exhibit A.

48.     In the Dismissal Order, the trial court ruled as follows:

> In responding to [Plaintiff Renata Placek's] motion to dismiss, [US Bank] has not disputed in any way or offered any evidence or even allegations in its complaint which might contradict Ms. Placek's position, which she has maintained for over four years, that the signatures on the note and the mortgage are not genuine, and that she was out of the country when the signatures were made. [US Bank] has neither introduced evidence supporting its position that the signature is genuine, nor disputed or attached the evidence Ms. Placek has introduced. Moreover . . . [US Bank] has had a full opportunity for written and oral discovery and has taken advantage of that opportunity.
>
> ***
>
> Accordingly, the Court grants Placek's motion to dismiss as to Count I of the amended complaint.

*See* Ex. A, at pp. 4-5.

49.     US Bank appealed the Dismissal Order, commencing case number 13-3696 in the Appellate Court of Illinois.

50.     On May 1, 2015, the Appellate Court entered an order (the "Appellate Order") affirming in part and reversing in part the Dismissal Order. A true and correct copy of the Appellate Order is attached hereto as Exhibit B.

51.     In the Appellate Order, the Appellate Court affirmed the trial court's dismissal of the foreclosure count.

52.     In the Appellate Order, the Appellate Court ruled as follows:

> . . . U.S. Bank's brief before this court contains no argument as to the propriety of the dismissal of count I [the foreclosure count] of the amended complaint. Accordingly, any arguments pertaining to the propriety of the dismissal of that count have been forfeited.
>
> ***
>
> Based upon the foregoing analysis, we affirm the circuit court's dismissal of count I [the foreclosure count] of the amended complaint, reverse the circuit court's dismissal of count II of the amended complaint, and remand the matter for further proceedings.

*See*, Ex. B, at ¶¶ 16, 30.

53.     US Bank did not appeal the Appellate Order, and on June 5, 2015, it became a final, unappealable, and binding order.

54.     As a result of the Dismissal Order and the Appellate Order, the claim of foreclosure was dismissed with prejudice.

55.     As a result of the Dismissal Order and the Appellate Order, the holder of the Fraudulent Mortgage no longer had a valid or enforceable legal claim against Plaintiff for payment on the related note or mortgage.

56.     On June 25, 2015, the court in the Foreclosure Action entered an order granting US Bank's motion for substitution of counsel, and Fidelity appeared as counsel to US Bank in the Foreclosure Action.

57.     On August 3, 2015, Chicago Volunteer Legal Services, a legal aid organization, filed an appearance in the Foreclosure Action on behalf of Plaintiff.

58.     On March 30, 2016, US Bank, by and through Fidelity as its attorneys, filed a second amended complaint in the Foreclosure Action (the "SAC"). A true and correct copy of the SAC is attached hereto as Exhibit C.

59.     US Bank and Fidelity caused the SAC to be served upon Plaintiff, thereby communicating the contents of the SAC to Plaintiff.

60.     Even though (a) US Bank's mortgage foreclosure claim had been dismissed with prejudice, (b) such dismissal had been affirmed on appeal, (c) the Appellate Order was final and unappealable, and (d) US Bank had no valid or enforceable claim of foreclosure against Plaintiff on account of enforcing the Fraudulent Mortgage as a valid and enforceable mortgage obligation, US Bank and Fidelity included a count of foreclosure on the Fraudulent Mortgage, and sought, among other things, (i) a judgment of foreclosure and sale on the Fraudulent Mortgage, (ii) a judgment for attorney's fees and costs, and (iii) a deficiency judgment.

61.     In support of the foreclosure count and the relief sought therein, the SAC contained a number of false and misleading statements made in connection with the attempt of US Bank and Fidelity to collect the alleged debt owed by Plaintiff to US Bank.

62.     The false and misleading statements included, among others, the following:

- "Information concerning said Mortgage: . . . Name of the mortgagors or grantors: Renata Placek" Ex. C, at ¶ 8(c).

- "Names of persons claimed to be personally liable for deficiency unless personal liability is discharged in a Bankruptcy proceeding, or otherwise released: Renata Placek" Ex C., at ¶ 8(o).

63.     In addition, the SAC stated that "[a]ll of the allegations contained in the original complaint heretofore filed are hereby incorporated in this Second Amended Complaint, unless otherwise restated, charged, or corrected herein." Ex. C, at ¶ 12.

64.     As a result, the SAC also restated false and misleading statements contained in the original complaint in the Foreclosure Action. A true and correct copy of the original complaint is attached hereto as Exhibit D.

65.     These false and misleading statements include, among others, the following:

- "Name or Names of the Mortgagors: Renata Placek", Ex. D, at ¶ 4(c).

- "Interest subject to the mortgage: Fee Simple", Ex. D, at ¶ 4(g).

- "Statement as to defaults: The Mortgage is in default due to the failure of the mortgagor to pay the monthly installments of principal, interest, taxes and insurance, and any other escrow items that may apply, for the period November 2008 through the present. There remains outstanding principal balance of $719,735.95 with interest accruing at $140.99 per diem plus attorneys fees, foreclosure costs, late charges, advances and expenses incurred by the Plaintiff as a result of the default." Ex. D, at ¶ 4(j).

- "Names of defendants claimed to be personally liable for deficiency, if any: Renata Placek", Ex. D, at ¶ 4(m).

- "Names of defendants whose right to possess the mortgage real estate, after the confirmation of the foreclosure same, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: Renata Placek", Ex. D, at ¶ 4(s).

66.     In addition, both count I of the SAC and the original complaint in the Foreclosure Action (which was incorporated by reference into the SAC) was plead in the form set forth in the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1504(a).

67.     Pursuant to 735 ILCS 5/15-1504(c), "[t]he statements contained in a complaint set forth in subsection (a) of Section 15-1504 are deemed and construed to include" certain allegations.

68.     Certain of these "deemed and construed" allegations were false and misleading, including the following allegations:

- "that, on the date indicated, the obligor of the indebtedness or other obligations secured by the mortgage was justly indebted in the amount of the indicated original indebtedness to the original mortgagee or payee of the mortgage note", 735 ILCS 5/15-1505(c)(1)

10

- "that the mortgagor . . . executed and delivered the mortgage as security for the not or other obligations", 735 ILCS 5/15-1505(c)(3)

- "that the mortgage constitutes a valid, prior and paramount lien upon the indicated interest in the mortgaged real estate, which lien is prior and superior to the right, title, interest, claim or lien of all parties and nonrecord claimants whose interests in the mortgaged real estate are sought to be terminated", 735 ILCS 5/15-1505(c)(7)

- "that by reason of the defaults alleged, if the indebtedness has not matured by its terms, the same has become due by the exercise, by the plaintiff or other persons having such power, of a right or power to declare immediately due and payable the whole of all indebtedness secured by the mortgage", 735 ILCS 5/15-1505(c)(8)

- "that the amounts indicated in the statement in the complaint are correctly stated and if such statement indicates any advances made or to be made by the plaintiff or owner of the mortgage indebtedness, that such advances were, in fact, made or will be required to be made, and under and by virtue of the mortgage the same constitute additional indebtedness secured by the mortgage", 735 ILCS 5/15-1505(c)(11)

69.    The SAC and the original complaint contained a statement that US Bank (or, as applicable, its predecessor) seeks attorneys' fees and costs.

70.    Pursuant to 735 ILCS 5/15-1504(d), "[a] statement in the complaint that plaintiff seeks the inclusion of attorneys' fees and of costs and expenses shall be deemed and construed to include" certain allegations.

71.    Certain of these "deemed and construed" allegations were false and misleading, including the following allegations:

- "plaintiff has been compelled to employ and retain attorneys to prepare and file the complaint and to represent and advise the plaintiff in the foreclosure of the mortgage and the plaintiff will thereby become liable for the usual, reasonable and customary fees of the attorneys in that behalf", 735 ILCS 5/15-1504(d)(1)

- "the plaintiff has been compelled to advance or will be compelled to advance, various sums of money in payment of costs, fees, expenses and disbursements incurred in connection with the foreclosure, including, without limiting the generality of the foregoing, filing fees, stenographer's fees, witness fees, costs of publication, costs of procuring and preparing documentary evidence and costs of procuring abstracts of title, Torrens certificates, foreclosure minutes and a title insurance policy", 735 ILCS 5/15-1504(d)(2)

- "under the terms of the mortgage, all such advances, costs, attorneys' fees and other fees, expenses and disbursements are made a lien upon the mortgaged real estate and the plaintiff is entitled to recover all such advances, costs, attorneys' fees, expenses and disbursements, together with interest on all advances at the rate provided in the mortgage, or, if no rate is provided therein, at the statutory judgment rate, from the date on which such advances are made", 735 ILCS 5/15-1504(d)(3)

- "in order to protect the lien of the mortgage, it may become necessary for plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate", 735 ILCS 5/15-1504(d)(4)

- "in order to protect and preserve the mortgaged real estate, it may also become necessary for the plaintiff to pay liability (protecting mortgagor and mortgagee), fire and other hazard insurance premiums on the mortgaged real estate, make such repairs to the mortgaged real estate as may reasonably be deemed necessary for the proper preservation thereof, advance for costs to inspect the mortgaged real estate or to appraise it, or both, and advance for premiums for pre-existing private or governmental mortgage insurance to the extent required after a foreclosure is commenced in order to keep such insurance in force", 735 ILCS 5/15-1504(d)(5)

- "under the terms of the mortgage, any money so paid or expended will become an additional indebtedness secured by the mortgage and will bear interest from the date such monies are advanced at the rate provided in the mortgage, or, if no rate is provided, at the statutory judgment rate", 735 ILCS 5/15-1504(d)(6)

72.     In addition, even though (a) US Bank's mortgage foreclosure claim had been dismissed with prejudice, (b) such dismissal had been affirmed on appeal, (c) the Appellate Order was final and unappealable, and (d) US Bank had no valid or enforceable claim of foreclosure against Plaintiff on account of the Fraudulent Mortgage, the SAC included a count for a declaratory judgment declaring that the Fraudulent Mortgage was valid and enforceable.

73.     In the declaratory judgment count, US Bank and Fidelity sought, among other things, (i) a declaration that Plaintiff's actions had ratified the Fraudulent Mortgage, (ii) a declaration that US Bank is entitled to enforce the provisions of the Fraudulent Mortgage, and (iii) a declaration that the Fraudulent Mortgage is a valid and enforceable lien.

74.     In support of declaratory judgment count, the SAC contained a number of false and misleading statements in connection with the attempt by US Bank and Fidelity to collect the alleged debt owed by Plaintiff to US Bank.

75.     The false and misleading statements include, among others, the following

- "Until this lawsuit was filed, Renata never repudiated the terms of the [Fraudulent Mortgage] under which here interest in the Property was refinanced", Ex. C, at ¶ 24

- Until this lawsuit was filed, Renata never repudiated the terms of the [Fraudulent Mortgage] under which the prior liens on the Property . . . were satisfied", Ex. C, at ¶ 25

76.     In reality, Renata, Plaintiff in this action, repudiated the Fraudulent Mortgage immediately upon learning of the fraud in October 2008.

77.     On November 14, 2016, US Bank, by and through its attorneys Fidelity, filed a Third Amended Complaint in the Foreclosure Action (the "<u>TAC</u>").

78.     In the TAC, US Bank and Fidelity restated the foreclosure and declaratory judgment counts against Plaintiff, using identical language to the SAC.

79.     The TAC was served on counsel to Plaintiff, thereby communicating the contents of the TAC to Plaintiff.

80.     Fidelity was hired by US Bank to collect on the Fraudulent Mortgage.

81.     Fidelity was authorized by US Bank to collect the alleged debt on behalf of US Bank.

82.     At all times relevant to this Complaint, US Bank authorized, directed, and ratified Fidelity's actions taken in connection with the collection of the Fraudulent Mortgage from Plaintiff.

83.     Fidelity acted in a representative capacity on behalf of US Bank.

84.     Fidelity's employees or representatives were acting at the control and direction of US Bank, which is vicariously liable for the actions of Fidelity's employees and/or

13

representatives. *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself . . . . [W]e think it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf.").

85.     On February 15, 2017, SPS sent to Plaintiff a document purporting to be a mortgage statement (the "February Statement"). A true and correct copy of the February Statement (account number redacted) is attached hereto as Exhibit E.

86.     The February Statement was an attempt to collect on the Fraudulent Mortgage, despite the fact that the Fraudulent Mortgage was not a valid or enforceable debt.

87.     The February Statement was sent directly to Plaintiff, even though (a) US Bank and SPS knew that Plaintiff was represented by counsel at that time, (b) Plaintiff's counsel's name and address was readily ascertainable by US Bank and SPS, (c) Plaintiff's counsel had not failed to respond to a communication from SPS or US Bank within a reasonable period of time, and (d) neither Plaintiff nor any court had given consent or permission to any person or party to communicate with Plaintiff directly regarding the Fraudulent Mortgage.

88.     The February Statement also contained a number of false and misleading statements made in connection with the attempt of SPS and US Bank to collect the alleged debt owed by Plaintiff to US Bank.

89.     The false and misleading statements included, among others, the following:

- That Plaintiff had a "Total Amount Due" of $405,787.85 under the Fraudulent Mortgage;

- That Plaintiff was "later on [her] mortgage payments";

- That "[f]ailure to bring [Plaintiff's] loan current may result in fees and foreclosure – the loss of [Plaintiff's] home";

- That "SPS has completed the first notice or filing required to start a foreclosure"; and

- That "[a] s of February 15, [Plaintiff was] 3,028 days delinquent" on the Fraudulent Mortgage.

90.     Upon information and belief, SPS was hired by US Bank to collect on the Fraudulent Mortgage.

91.     Upon information and belief, SPS was authorized by US Bank to collect the alleged debt on behalf of US Bank.

92.     Upon information and belief, at all times relevant to this Complaint, US Bank authorized, directed, and ratified SPS's actions taken in connection with the collection of the Fraudulent Mortgage from Plaintiff.

93.     Upon information and belief, SPS acted in a representative capacity on behalf of US Bank.

94.     Upon information and belief, SPS's employees or representatives were acting at the control and direction of US Bank, which is vicariously liable for the actions of SPS's employees and/or representatives. *See Janetos*, 825 F.3d at 325.

95.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe emotional distress, including anxiety, shock, fear, confusion, and embarrassment.

96.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and sought medical treatment for panic attacks, trauma, anxiety, and related issues, and for chest pain and back pain related to her panic attacks, trauma, anxiety, and related issues.

97.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered adverse consequences to her family relationships, her friendships, and her professional life.

## COUNT I – VIOLATIONS OF THE FDCPA
## (AGAINST US BANK)

98.     Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

99.     Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the prior valid mortgages refinanced by the Fraudulent Mortgage were extended on Plaintiffs' primary residence and were strictly for personal, family, and household purposes.

100.    The Fraudulent Mortgage qualifies as a "debt" under Section 1692a(5) of the FDCPA.

101.    US Bank is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, and (c) the Fraudulent Mortgage was allegedly in default when it acquired servicing and/or enforcement rights thereto.

**A.      Violations of Sections 1692c(a)(2), 1692d, 1692e, e(2), e(5), and e(10), and 1692f and f(1) of the FDCPA**

102.    Sections 1692c, 1692d, 1692e and 1692f of the FDCPA state, in relevant part, as follows:

**1692c. Communication in connection with debt collection**

**(a) Communication with the consumer generally**

**Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—**

**\*\*\***

**(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.**

**1692d. Harassment or abuse**

16

A debt may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

**1692e. False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(2) The false representation of--**

    **(A) the character, amount, or legal status of any debt; or**

    **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**\*\*\***

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**\*\*\***

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**1692f. Unfair practices**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

    103.    In its attempts to collect a debt from Plaintiff, US Bank engaged in improper communications, harassment, and abuse, and employed false, deceptive, misleading, unfair, and unconscionable conduct by, among other things:

    i.    sending, through its agent SPS, the February Statement directly to Plaintiff when US Bank knew that Plaintiff was represented by counsel, in violation of Section 1692c(a)(2);

    ii.    filing the SAC and asserting a claim of foreclosure therein in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was

based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

iii.    continuing to litigate the foreclosure count of the SAC in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

iv.    filing the SAC and asserting a claim for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

v.    continuing to litigate the claim in the SAC for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

vi.    filing the TAC and asserting a claim of foreclosure therein when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

vii.    continuing to litigate the foreclosure count of the TAC in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

viii.    filing the TAC and asserting a claim for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Sections 1692d of the FDCPA;

ix.    continuing to litigate the claim in the TAC for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

x.    misrepresenting the character, amount, and legal status of the Fraudulent Mortgage in the SAC in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

xi.     making false representations in the SAC of compensation in the form of attorneys' fees that may be lawfully received for the collection of the Fraudulent Mortgage in violation of Section 1692e(2)(B) of the FDCPA;

xii.    threatening to obtain a judgment of foreclosure on the Fraudulent Mortgage in the SAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xiii.   threatening to obtain a judgment of attorneys' fees and costs in the SAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xiv.    making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the SAC, including as set forth in ¶¶ 60-75 above, in violation of Sections 1692e and e(10) of the FDCPA;

xv.     misrepresenting the character, amount, and legal status of the Fraudulent Mortgage in the TAC in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

xvi.    making false representations in the TAC of compensation in the form of attorneys' fees that may be lawfully received for the collection of the Fraudulent Mortgage in violation of Section 1692e(2)(B);

xvii.   threatening to obtain a judgment of foreclosure on the Fraudulent Mortgage in the TAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xviii.  threatening to obtain a judgment of attorneys' fees and costs in the TAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xix.    making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the TAC, including as set forth in ¶¶ 60-75 above, in violation of Sections 1692e and e(10) of the FDCPA

xx.     using unfair and unconscionable means to collect a debt by claiming foreclosure in the SAC when its foreclosure claim had already been denied by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxi.    using unfair and unconscionable means to collect a debt by claiming in the SAC that Plaintiff had ratified the Fraudulent Mortgage when the Fraudulent Mortgage had already been ruled invalid by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxii. misrepresenting the Fraudulent Mortgage as a valid mortgage in the SAC and attempting to collect on the Fraudulent Mortgage when the collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

xxiii. seeking in the SAC a judgment declaring the invalid Fraudulent Mortgage to be a valid, enforceable debt and attempting to collect on the Fraudulent Mortgage when no basis existed under contract or law to declare the Fraudulent Mortgage a valid, enforceable debt and collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

xxiv. using unfair and unconscionable means to collect a debt by claiming foreclosure in the TAC when its foreclosure claim had already been denied by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxv. using unfair and unconscionably means to collect a debt by claiming in the TAC that Plaintiff had ratified the Fraudulent Mortgage when the Fraudulent Mortgage had already been ruled invalid by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxvi. misrepresenting the Fraudulent Mortgage as a valid mortgage in the TAC and attempting to collect on the Fraudulent Mortgage when the collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

xxvii. seeking in the TAC a judgment declaring the invalid Fraudulent Mortgage to be a valid, enforceable debt and attempting to collect on the Fraudulent Mortgage when no basis existed under contract or law to declare the Fraudulent Mortgage a valid, enforceable debt and collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

xxviii. misrepresenting, through its agent SPS, the character, amount, and legal status of the Fraudulent Mortgage in the February Statement in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

xxix. through its agent SPS, threatening to foreclose on the Fraudulent Mortgage in the February Statement when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xxx. through its agent SPS, making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the February Statement, including as set forth in ¶ 89 above, in violation of Sections 1692e and e(10) of the FDCPA; and

xxxi. through its agent SPS, using unfair or unconscionably means to attempt to collect the Fraudulent Mortgage by sending the February Statement in violation of Section 1692f of the FDCPA; and

xxxii. through its agent SPS, misrepresenting that the Fraudulent Mortgage was a valid mortgage in the February Statement and attempting to collect on the Fraudulent Mortgage when collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA.

104. Plaintiff suffered damages proximately caused by US Bank's conduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. grant judgment in Plaintiff's favor against US Bank;

    b. award Plaintiff statutory and actual damages in an amount to be determined at trial;

    c. award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

    d. award any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATIONS OF THE FDCPA
### (AGAINST FIDELITY)

105. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

106. Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the prior valid mortgages refinanced by the Fraudulent Mortgage were extended on Plaintiffs' primary residence and were strictly for personal, family, and household purposes.

107. The Fraudulent Mortgage qualifies as a "debt" under Section 1692a(5) of the FDCPA.

108. Fidelity is a "debt collector" under Section 1692a(6) of the FDCPA because it regularly uses the mail or telephone to collect or attempt to collect debts owed or due or asserted to be owed or due to another.

**A.**     **Violations of Sections 1692d, 1692e, e(2), e(5), and e(10), and 1692f and f(1) of the FDCPA**

109. Sections 1692d, 1692e and 1692f of the FDCPA state, in relevant part, as follows:

**1692d. Harassment or abuse**

21

**A debt may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.**

**1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(2) The false representation of--**

> **(A) the character, amount, or legal status of any debt; or**

> **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**\*\*\***

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**\*\*\***

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**1692f. Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

110.  In its attempts to collect a debt from Plaintiff, Fidelity engaged in harassment and

abuse, and employed false, deceptive, misleading, unfair, and unconscionable conduct by:

  i.  filing the SAC and asserting a claim of foreclosure therein in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

  ii.  continuing to litigate the foreclosure count of the SAC in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was based

on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

iii.    filing the SAC and asserting a claim for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

iv.    continuing to litigate the claim in the SAC for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

v.    filing the TAC and asserting a claim of foreclosure therein when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

vi.    continuing to litigate the foreclosure count of the TAC in an attempt to collect the Fraudulent Mortgage when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

vii.    filing the TAC and asserting a claim for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Sections 1692d of the FDCPA;

viii.    continuing to litigate the claim in the TAC for a judgment declaring the Fraudulent Mortgage was valid and enforceable when no legal basis for such claim existed and it was based on false premises, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with US Bank's efforts to collect a debt in violation of Section 1692d of the FDCPA;

ix.    misrepresenting the character, amount, and legal status of the Fraudulent Mortgage in the SAC in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

x.    making false representations in the SAC of compensation in the form of attorneys' fees that may be lawfully received for the collection of the Fraudulent Mortgage in violation of Section 1692e(2)(B) of the FDCPA;

xi.     threatening to obtain a judgment of foreclosure on the Fraudulent Mortgage in the SAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xii.     threatening to obtain a judgment of attorneys' fees and costs in the SAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xiii.     making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the SAC, including as set forth in ¶¶ 60-75 above, in violation of Sections 1692e and e(10) of the FDCPA;

xiv.     misrepresenting the character, amount, and legal status of the Fraudulent Mortgage in the TAC in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

xv.     making false representations in the TAC of compensation in the form of attorneys' fees that may be lawfully received for the collection of the Fraudulent Mortgage in violation of Section 1692e(2)(B) of the FDCPA;

xvi.     threatening to obtain a judgment of foreclosure on the Fraudulent Mortgage in the TAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xvii.     threatening to obtain a judgment of attorneys' fees and costs in the TAC when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

xviii.     making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the TAC, including as set forth in ¶¶ 60-75 above, in violation of Sections 1692e and e(10) of the FDCPA

xix.     using unfair and unconscionable means to collect a debt by claiming foreclosure in the SAC when the foreclosure claim had already been denied by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xx.     using unfair and unconscionable means to collect a debt by claiming in the SAC that Plaintiff had ratified the Fraudulent Mortgage when the Fraudulent Mortgage had already been ruled invalid by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxi.     misrepresenting the Fraudulent Mortgage as a valid mortgage in the SAC and attempting to collect on the Fraudulent Mortgage when the collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

24

xxii.    seeking in the SAC a judgment declaring the invalid Fraudulent Mortgage to be a valid, enforceable debt and attempting to collect on the Fraudulent Mortgage when no basis existed under contract or law to declare the Fraudulent Mortgage a valid, enforceable debt and collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

xxiii.    using unfair and unconscionable means to collect a debt by claiming foreclosure in the TAC when the foreclosure claim had already been denied by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxiv.    using unfair and unconscionably means to collect a debt by claiming in the TAC that Plaintiff had ratified the Fraudulent Mortgage when the Fraudulent Mortgage had already been ruled invalid by a final, unappealable judgment, in violation of Section 1692f of the FDCPA;

xxv.    misrepresenting the Fraudulent Mortgage as a valid mortgage in the TAC and attempting to collect on the Fraudulent Mortgage when the collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA; and

xxvi.    seeking in the TAC a judgment declaring the invalid Fraudulent Mortgage to be a valid, enforceable debt and attempting to collect on the Fraudulent Mortgage when no basis existed under contract or law to declare the Fraudulent Mortgage a valid, enforceable debt and collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA.

111.    Plaintiff suffered damages proximately caused by Fidelity's conduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.    grant judgment in Plaintiff's favor against Fidelity;

    b.    award Plaintiff statutory and actual damages in an amount to be determined at trial;

    c.    award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

    d.    award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATIONS OF THE FDCPA
### (AGAINST SPS)

112.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

113.    Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the prior valid mortgages refinanced by the Fraudulent Mortgage were extended on Plaintiffs' primary residence and were strictly for personal, family, and household purposes.

114.    The Fraudulent Mortgage qualifies as a "debt" under Section 1692a(5) of the FDCPA.

115.    SPS is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts, (b) it regularly collects or attempts to collect debts owed or due or asserted to be owed or due to another, (c) the principal purpose of its business is to collect debts, and (c) the Fraudulent Mortgage was allegedly in default when it acquired servicing rights thereto.

**A.    Violations of Sections 1692c(a)(2), 1692e, e(2), e(5), and e(10), and 1692f and f(1) of the FDCPA**

116.    Sections 1692c, 1692e and 1692f of the FDCPA state, in relevant part, as follows:

**1692c. Communication in connection with debt collection**

**(a) Communication with the consumer generally**

**Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—**

**\*\*\***

**(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.**

**1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(2) The false representation of--**

26

**(A) the character, amount, or legal status of any debt; or**

**(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**\*\*\***

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**\*\*\***

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**1692f. Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

117.    In its attempts to collect a debt from Plaintiff, SPS employed improper communications and false, deceptive, misleading, unfair, and unconscionable conduct by, among other things:

    i.    Sending the February Statement directly to Plaintiff when SPS knew that Plaintiff was represented by counsel, in violation of Section 1692c(a)(2);

    ii.    misrepresenting the character, amount, and legal status of the Fraudulent Mortgage in the February Statement in violation of Sections 1692e, e(2)(A), and e(10) of the FDCPA;

    iii.    threatening to foreclose on the Fraudulent Mortgage in the February Statement when such action cannot legally be taken in violation of Sections 1692e and e(5) of the FDCPA;

    iv.    making false, deceptive, and misleading representations in connection with the collection of an alleged debt, including the false, deceptive, and misleading representations in the February Statement, including those set forth in ¶ 89 above, in violation of Sections 1692e and e(10) of the FDCPA

v.     using unfair or unconscionably means to attempt to collect the Fraudulent Mortgage by sending the February Statement in violation of Section 1692f of the FDCPA

vi.    misrepresenting that the Fraudulent Mortgage was a valid mortgage in the February Statement and attempting to collect on the Fraudulent Mortgage when collection thereon was not authorized by contract or law, in violation of Sections 1692f and f(1) of the FDCPA;

118.    Plaintiff suffered damages proximately caused by SPS's conduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

a.    grant judgment in Plaintiff's favor against SPS;

b.    award Plaintiff statutory and actual damages in an amount to be determined at trial;

c.    award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

d.    award any other relief this Honorable Court deems equitable and just.

**Plaintiff Demands Trial by Jury.**

Respectfully Submitted,

/s/ Daniel Brown
Daniel Brown (ARDC # 6299184)
The Law Office of Daniel Brown
208 S. Jefferson St., Suite 204
Chicago, IL 60661
(773) 453-7410
daniel@mainstreetattorney.com

*Attorney for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of Plaintiff's claims. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that such Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

By: /s/ Daniel Brown
    Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorneys' fees have been assigned to counsel.

By: /s/ Daniel Brown
    Daniel Brown