IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENATA PLACEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-CV-02415 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| U.S. BANK, NATIONAL ASSOCIATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Renata Placek brought this action under the Fair Debt Collection Practices Act "FDCPA", 15 U.S.C. § 1692 *et seq.*, against Fidelity National Law Group ("Fidelity"), U.S. Bank, N.A. ("U.S. Bank"), and Select Portfolio Servicing, Inc. ("SPS"). SPS and U.S. Bank answered her amended complaint ("AC", ECF No. 9) on July 3, 2017. ECF Nos. 23, 24. Fidelity filed a motion to stay this action, contending that the court should abstain from hearing this case under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because a parallel proceeding is pending in state court. For the following reasons, the court concludes that a parallel proceeding is pending but finds that the ten factors the court must consider under *Colorado River* do not, on balance, favor abstention now.

## I. BACKGROUND

Placek alleges that she is the victim of identity theft and mortgage fraud. In her amended complaint she pleads that an acquaintance impersonated her while she was out of the country in 2007. *See* ECF No. 9 ¶¶ 16–22. The imposter allegedly forged Placek's signature and obtained a $720,000 loan in her name secured by a mortgage on her home in Morton Grove, Illinois. *See id.* Placek first learned of the loan, which was structured as a refinancing transaction, in October

2008 when she received a notice of underpayment, *id.* ¶ 25, and she has since maintained that the loan was the result of fraud.

On March 5, 2009, one of U.S. Bank's predecessors brought a foreclosure action against Placek (the "state court action"). *See id.* ¶ 39; Compl., *Bank of Am., N.A. v. Placek*, No. 09 CH 10076, ECF No. 9-4 Ex. D. The complaint was amended to assert a foreclosure count and a count for an equitable lien on the property. AC ¶ 43. The state court dismissed both counts with prejudice in an order entered July 22, 2013. *Id.* ¶ 47; *see also* Dismissal Order, ECF No. 9-1 Ex. A. U.S. Bank appealed, and the Illinois Court of Appeals affirmed the dismissal order in part and reversed it in part (the "appellate order"). AC ¶¶ 50–51; ECF No. 9-2 Ex. B, 2015 IL App (1st) 133696-U. The court of appeals held that U.S. Bank forfeited any challenge to the dismissal of the foreclosure count by failing to brief the issue. 2015 IL App (1st) 133696-U ¶ 16.

Placek's FDCPA claims here stem ultimately from that ruling. She alleges that the decision of the Appellate Court became final on June 5, 2015, AC ¶ 53, and that "the claim of foreclosure was dismissed with prejudice" and "the holder of the Fraudulent Mortgage no longer had a valid or enforceable legal claim against Plaintiff for payment on the related note or mortgage" as a result. AC ¶¶ 54, 55.

Placek generally contends that defendants violated the FDCPA by continuing to litigate the mortgage's validity on remand. *See* AC ¶¶ 103, 110, 117. Fidelity substituted as U.S. Bank's counsel on remand and filed a Second Amended Complaint ("SAC") on March 30, 2016, and a Third Amended Complaint ("TAC") on November 14, 2016. AC ¶¶ 56, 58, 59, 77; *see also* SAC, ECF No. 9-3 Ex. C. Both amended complaints incorporated the original state-court complaint and pleaded a foreclosure count and a count seeking a declaratory judgment that the mortgage was valid. *See* AC ¶¶ 60, 63, 78; SAC ¶¶ 12, 28. Placek names SPS, which she

2

alleges U.S. Bank hired to collect the disputed mortgage loan, AC ¶ 91, as a defendant here based on a mortgage statement dated February 15, 2017. *See* AC ¶¶ 85, 87, 89, 117; Mortgage Statement, ECF No. 9-5 Ex. E.

Placek commenced this FDCPA suit in this court on March 29, 2017. ECF No. 1. While the instant motion was being briefed, the state trial court entered an order disposing of all claims and defenses in the case. ECF No. 29-1 Ex. A. The parties have appealed, and the appeal remains pending as far as this court can tell. Reply 1, ECF No. 33, Ex. A.

## II. ANALYSIS

Ordinarily, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910) (other citation omitted). But *Colorado River* and its progeny teach that "federal courts in some exceptional cases . . . [may] defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817); *see also Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citations omitted) (stating that conserving resources and preventing inconsistent results is the "primary purpose" of the *Colorado River* doctrine).

Determining whether abstention under *Colorado River* is appropriate involves a two-step inquiry. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814–15 (7th Cir. 2016) (quoting *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011). The court first determines whether the concurrent state and federal actions are "actually parallel." *Id.* at 814 (quoting *Adkins*, 644 F.3d at 498); *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). If the two actions are

3

parallel, the court assesses whether "exceptional circumstances" justify abstention. *Adkins*, 644 F.3d at 498.

## A. The Suits Are Parallel

To decide whether two suits are parallel, the court considers whether "substantially the same parties are contemporaneously litigating substantially the same issues" in another forum, *Deb*, 832 F.3d at 814, 815 (quoting *Adkins*, 644 F.3d at 498–99), and if "both cases would be resolved by examining largely the same evidence." *Huon*, 657 F.3d at 647. "Any doubt" about whether the two suits are parallel "should be resolved in favor of exercising jurisdiction." *Deb*, 832 F.3d at 815 (quoting *Adkins*, 644 F.3d at 498–99).

The federal and state suits here involve substantially the same parties with the exception of two defendants named only in the foreclosure action. Placek and U.S. Bank are parties in both cases. Fidelity and SPS have been made defendants in federal court only, but Placek bases her claims against them on actions they allegedly took as representatives of U.S. Bank, AC ¶¶ 56, 58, 91. *See, e.g.*, *Nieves v. Bank of Am., N.A.*, No. 14-CV-2300, 2015 WL 753977, at *2, 4 (N.D. Ill. Feb. 20, 2015) (finding federal FDCPA action paralleled bank's foreclosure suit even though the loan servicer was not a party in state court); *Smith v. Bank of Am., N.A.*, No. 14 C 1041, 2014 WL 3938547, at *3 (N.D. Ill. Aug. 12, 2014) (holding federal FDCPA and state foreclosure action involved substantially similar parties because, "[a]lthough [the law firm] is [the bank]'s counsel—not a party—in the state court case, it is a defendant here only because of acts in furtherance of its representation of [the bank pursuing foreclosure in state court]"). Three defendants in the foreclosure action are not parties here: Krzysztof Placek, Irena Patyk, and Irena Richardson. Placek acknowledges that the last two may well be the same person going by different names. Resp. to Mot. to Stay 4 n.2, ECF No. 29.

Perfect symmetry "is unnecessary." *Deb*, 832 F.3d at 814 (quoting *Adkins*, 644 F.3d at 499). To determine whether the asymmetries here defeat parallelism, the court must turn to whether substantially the same legal and factual issues are being litigated in state and federal court. *See id.* at 814–15; *Huon*, 657 F.3d at 645–46.

The parties frame the issues quite differently. Fidelity argues that both cases "involve [two] similar or related factual issues:" (1) the propriety of including a foreclosure count in the SAC and TAC in state court and continuing to litigate that case after the Illinois court of appeals' May 1, 2015, order; and (2) the validity of the 2007 mortgage and Placek's contentions that it is unenforceable. Mot. to Stay 7, ECF No. 26. Asserting that both are questions for a state court, Fidelity cites Illinois authority to demonstrate that it needed to include a foreclosure count in the SAC and TAC after remand to preserve the claim for possible appellate review later. *Bonhomme v. St. James*, 970 N.E. 2d 1, 5–10 (Ill. 2012). This court refers to this as the "preservation issue" and stresses that it is still being litigated in state court.

Placek sees matters differently. On similarity of factual issues, she characterizes the foreclosure action as arising from the May 2007 refinancing and her FDCPA case as arising out of actions taken over eight years later—the filing of pleadings in the foreclosure action in 2015 and thereafter. Resp. to Mot. to Stay 5–6. She points out that the Seventh Circuit has held that an FDCPA action may be predicated on statements in pleadings filed in state court. *Id.* at 6 (citing *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810–12 (7th Cir. 2016)). Consequently, argues Placek, the legal theories differ. The FDCPA claims here raise only questions of federal law while the foreclosure action presents questions of Illinois law and procedure. Resp. to Mot. to Stay 6.

5

When analyzing whether state and federal cases are parallel under *Colorado River*, "the question is whether there is a substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case." *Deb*, 832 F.3d at 815 (quoting *Adkins*, 644 F.3d at 999) (alteration in original); *see also Pirard v. Bank of Am.*, No. 12 C 2901, 2013 WL 1154294, at *4 (N.D. Ill. Mar. 19, 2013) (citing *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985)) (relying on this principle to determine that cases were parallel despite presence of some parties in only one suit). True, the FDCPA questions are separate from the related, material, questions of state law at issue in the foreclosure action. *See Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874–876 (7th Cir. 2015) (analyzing whether filing motion for summary judgment in state court foreclosure suit "is an unfair or unconscionable means of attempting to collect a debt under § 1692f" of the FDCPA); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (holding that filing a time-barred suit in state court to collect a debt would violate the FDCPA); *see also Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407,1414–15 (2017) (considering separate purposes of the FDCPA and the Bankruptcy Code when deciding that a plaintiff cannot sue under the FDCPA when a creditor files a time-barred proof of claim in bankruptcy court); *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 736–37 (7th Cir. 2016) (same). Different bodies of law govern the claims in state and federal court, but the state and federal cases may still present substantially similar issues.

Fidelity has the better argument under this standard. Fidelity cites several FDCPA cases decided in this district eschewing a formalistic approach to the relationship between a foreclosure action and an FDCPA suit. In *Smith*, *supra*, for example, the plaintiff claimed a lender violated the FDCPA by pursuing a foreclosure action in state court even though it lacked standing to do so under Illinois law. 2014 WL 3938547, at *3. The *Smith* court looked past the

6

formal distinctions between state and federal law claims to find that the cases were parallel because "entry of judgment of foreclosure against Smith in the state case will necessarily resolve [the defendant's] standing to foreclose on the Mortgage and will thus dispose of the sole basis for all of Smith's [FDCPA] claims." *Id.*; *see also Pirard*, 2013 WL 1154294, at *4 ("[T]he plaintiffs have alleged that the defendants violated state and federal law by improperly assigning and recording their mortgage, forging documents, and improperly collecting on the plaintiffs' mortgage debt. An entry of judgment of foreclosure against the plaintiffs in state court will substantially, if not fully, resolve the plaintiffs' claims here . . . for . . . violations of the FDCPA"); *Charles v. Bank of Am., N.A.*, No. 11 C 8217, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5, 2012).

As in *Smith* and cases like it, resolving the issues being litigated in state court is substantially likely to resolve, or greatly narrow, the issues here. Placek's argument that the state and federal cases are not parallel inadvertently makes the point. She disagrees with Fidelity's claim about the preservation issue, citing Illinois cases she contends show that U.S. Bank could not litigate the mortgage's validity further after the Illinois Appellate Court's May 1, 2015, order. ECF No. 29 at 7–9 (citations omitted). The dispute over the preservation issue awaits resolution in state court, and once it is resolved, Placek's FDCPA claims, all of which appear to hinge on the preservation issue will likely be eliminated or narrowed.

But if Placek wins in state court, her FDCPA claims won't go away. In that event, as Placek surmises, Resp. to Mot. to Stay 6, the likely FDCPA question would become whether defendants can "show[ ] by a preponderance of evidence that the [FDCPA] violation was not intentional and resulted from a bona fide error." 15 U.S.C. § 1692k(c). U.S. Bank's state of mind and that of its counsel while litigating the preservation issue will almost certainly not be

7

directly at issue in state court. *Cf. Ind. Lumbermens Mut. Ins. Co. v. Wild*, No. 93-C-5312, 1994 U.S. Dist. LEXIS 10810, at *4–5 (N.D. Ill. Aug. 4, 1994) (Williams, J.) (finding that state and federal suits did not necessarily involve substantially similar questions because they could be resolved by construing different contracts). If the possibility of inquiring into U.S. Bank's state of mind exists only in the federal case, and if this means the two cases are not parallel, *Colorado River* abstention would not apply, and the parties would be obliged to litigate U.S. Bank and Fidelity's state of mind in federal court immediately, even as the merits of the preservation issue are being litigated in state court. Yet, the Supreme Court recently reasoned, in the context of a bankruptcy case, that an inquiry under the FDCPA into the state of mind of a party who files a pleading in another court should wait until the primary litigation concludes. *See Johnson*, *supra*, 137 S. Ct. at 1415.

As this admonition about sound practice suggests, the possibility of an inquiry into the filer's state of mind does not necessarily preclude a finding that the two suits are parallel. The issue of the possible disruption of state proceedings may often be better addressed at the second step of the *Colorado River* inquiry. Here, even a decision in state court adverse to U.S. Bank on the preservation issue would likely shed substantial light on the FDCPA bona fide error question in federal court. The state appellate court might do anything ranging from describing the question as very close to sanctioning U.S. Bank. Whatever happens, the state court's decision will furnish guidance on how bona fide U.S. Bank's litigation conduct in state court was and likely simplify the issue for this court. *Cf. Skibbe v. U.S. Bank Trust, N.A.*, No. 16 C 192, 2018 WL 905522, at *6–7 (N.D. Ill. Feb. 15, 2018) (deciding merits of FDCPA claim and arguing that "[t]here is no need for follow-on § 1692e litigation that increases the cost of resolving bona fide debtor-creditor disputes" in state court).

This court therefore concludes that "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *Deb*, 832 F.3d at 814 (quoting *Adkins*, 644 F.3d at 499). That is, the cases qualify as parallel under *Colorado River*.

**B. The *Colorado River* Factors Are Split; No Exceptional Circumstances**

Having decided that this case parallels the foreclosure action, the court turns to whether exceptional circumstances justifying abstention exist. The court must consider ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Adkins*, 644 F.3d at 500–01 (citations omitted). No one factor is determinative, but the presence of federal law issues weighs in favor of exercising jurisdiction. *Huon*, 657 F.3d at 648 (citations omitted). Due to the presumption against abstention, inapplicable or neutral factors also weigh in favor of exercising jurisdiction. *Id.* (citations omitted).

1. Whether the State Court Has Assumed Jurisdiction Over Property

Placek contends that "no property [is] at issue" in federal court. Resp. to Mot. to Stay 11. This factor is about the state court, not federal. The state court asserted jurisdiction over the Morton Grove property when U.S. Bank's predecessor initiated the foreclosure action, so the first factor favors abstention. *See Nieves*, 2015 WL 753977, at *5.

2. The Inconvenience of the Federal Forum

"Since the federal and state cases . . . are both pending in Chicago courts, the federal forum is not inconvenient and the second factor weighs against abstention." *Freed*, 756 F.3d at 1021–22.

9

3. <u>The Desirability of Avoiding Piecemeal Litigation</u>

Subject to the following analysis, the court concludes that the third factor disfavors abstention. As already discussed, the state and federal cases involve substantially overlapping legal and factual issues with the possible exception of U.S. Bank's state of mind. Staying this case will conserve judicial resources by avoiding potentially wasteful litigation on issues that are now on appeal in state court. *See Freed*, 756 F.3d at 1022 (agreeing that conducting discovery and litigating common issues would "cause wasteful litigation, hindering judicial economy" (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992))).

Nonetheless, it is possible to move this case forward efficiently while avoiding those pitfalls. *See Tyrer*, 456 F.3d at 756 ("[T]he danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources . . . ."). Allowing discovery into U.S. Bank's motives runs the risk of slamming into privilege issues and unseemly inquiry into counsel's strategy in a pending state case. *See id.* ("The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications." (quoting *Lumen Constr.*, 780 F.2d at 694); *see also Johnson*, 137 S. Ct. at 1415. That concern has no application to practice concerning the pleadings. In *Bentrud*, *supra*, 794 F.3d at 876–77, the Seventh Circuit decided an FDCPA claim challenging the filing of a pleading and motion for summary judgment in state court. Though the case was decided at summary judgment, the analysis did not expressly discuss the motives of the attorneys involved; rather, the Seventh Circuit looked to the parties' litigation positions and the record of what was happening in state court to decide that an FDCPA violation did not occur. *See id.* The court refused to

"transform the FDCPA into an enforcement mechanism for matters governed by state law," though it looked to background state-law rules to analyze whether the defendants' conduct was unconscionable. *Id.* Returning to the case at hand, litigating the sufficiency of the complaint would not require discovery, *see* Fed. R. Civ. P. 26(e), and an analysis of the substantive issues like the one conducted in *Bentrud* appears to be possible without deciding the questions presently before the state appellate court. With these caveats, the third factor disfavors abstention.

4. The Order in Which the Courts Assumed Jurisdiction

Placek says that the state court did not, and could not, obtain jurisdiction over her FDCPA claims. Resp. to Mot. to Stay 11. But the FDCPA provides for concurrent jurisdiction in state court, 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction . . . ."), and Placek suggests no reason she could not have asserted her FDCPA claims in the state court as counterclaims, Resp. to Mot. to Stay 11. Her failure to bring a counterclaim does not change the order in which the two courts assumed jurisdiction.

The state court beat this court to jurisdiction by almost eight years. The fourth factor favors abstention. *See Nieves*, 2015 WL 753977, at *5.

5. The Source of Governing Law

As already discussed, federal law governs this case, though many of the issues are intertwined with state law. State law will dictate the outcome of the foreclosure action, and a decision on in that action may effectively obviate the need to further litigate in federal court. The court nonetheless finds this factor to be neutral for the reasons discussed under the third factor.

6. Adequacy of State Court Action to Protect the Federal Plaintiff's Rights

Placek contends that she cannot now vindicate her FDCPA rights in state court because the case has been fully adjudicated. Resp. to Mot. to Stay 11. Again, she suggests no reason that she could not have counterclaimed under the FDCPA in state court or that she will not be able to do so on remand should the case again be returned to the state trial court. *See id.* Accordingly, the sixth factor favors abstention. *See Freed*, 756 F.3d at 1022–23.

7. The Cases' Relative Progress

The seventh factor (the cases' relative progress) also favors abstention. The parties conducted more than four years of discovery in state court; the state court has twice adjudicated all of their claims; and the parties are before the Illinois appellate court for the second time. *See Nieves*, 2015 WL 753977, at *5 (holding first, fourth, and seventh factors favored abstention because parties litigated foreclosure in state court for three years).

8. and 9. The Presence or Absence of Concurrent Jurisdiction and the Availability of Removal

Fidelity's motion to stay barely discusses removal and concurrent jurisdiction. ECF No. 26 at 9. It says, without citing authority, that "[t]he lender's right to foreclosure as well as the form that amendment pleadings may take, are issues governed by Illinois law." *Id.* This is an axiom, not an argument. The court deems the eighth and ninth factors waived and treats them as disfavoring abstention.

10. The Vexatious or Contrived Nature of the Federal Claim

The final *Colorado River* factor weighs in favor of abstention. Fidelity represents that it advised Placek, in a motion for additional time to amend the state court complaint, that it intended to replead its foreclosure count to preserve the issue for appeal. Mot. to Stay 9, ECF No. 26. Placek does not dispute that representation. Resp. 12, ECF No. 29. Rather, she points

12

to cases (already cited) allowing her to base an FDCPA claim on pleadings filed in state court. *See id.* That Placek has an arguable basis in case law for filing this FDCPA action doesn't prove that it was brought for a proper purpose. *See Freed*, 756 F.3d at 1024 (finding tenth factor favored abstention where claims could have been brought in a single, state court proceeding; finding concerns of "abuse of process . . . and a manipulation of the system" to be legitimate). Together, these two facts—that Placek knew U.S. Bank was trying to preserve its position for a possible appeal and that this could have been brought as a single case in state court—tip the scale in favor of abstention. *See id.* (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988)) (tenth factor can favor abstention "when the claims and parties in the federal suit could have been included in the original state court proceeding.").

\*\*\*

Counting factors yields a tie. Five (1, 4, 6, 7, 10) favor abstention. Five (2, 3, 5, 8, 9) do not. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *see also Tyrer*, 456 F.3d at 754 ("The weight to be given any one factor is determined solely by the circumstances of the particular case . . . ." (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990))). After balancing the *Colorado River* factors in light of the presumption of exercising jurisdiction, the court remains unpersuaded that extraordinary circumstances justifying abstention presently exist.

All but one of the factors favoring abstention can be summarized this way: litigation in state court has proceeded to an advanced stage, and the questions presented there and here

largely depend on state, not federal law. Placek's FDCPA claims also appear somewhat contrived.

On the other hand, *Bentrud*, *supra*, was an FDCPA action in which the plaintiff challenged the defendant's decision to file a motion for summary judgment in state court. While the parties arbitrated their dispute in state court, the federal courts adjudicated the FDCPA claim. *See* 794 F.3d at 876–77. *Bentrud* and cases like it demonstrate that litigating the propriety of actions taken in state court is sometimes possible without dropping a federal depth charge into state court. Here, the eight years of litigation that has already occurred in state court counsels in favor of exercising federal jurisdiction. Stays prolong litigation. If this court can take steps to bring the parties' overarching dispute to as speedy a conclusion as possible without unduly interfering with litigation in state court, *Colorado River* itself teaches that it is this court's "unflagging obligation" to do so. 424 U.S. at 818 (citations omitted).

### III. CONCLUSION

Having considered and balanced the *Colorado River* factors, Fidelity's motion to stay, ECF No. 26, is denied. Its alternative request for a discretionary stay is denied for the same reasons. A status conference is set for April 18, 2018, at 9:30 a.m.

Date: March 20, 2018                             /s/
                                              Joan B. Gottschall
                                              United States District Judge

14